United States District Court
Southern District of Texas
**ENTERED**
March 29, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| ANTHONY BOYD, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-06-22** |
| | § | |
| JOE D. DRIVER, | § | |
| **Warden, FCI Three Rivers, *et al.*,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Anthony Boyd, a federal prisoner, brings this pro se *Bivens* action alleging that Defendants—13 current and former Bureau of Prisons (BOP) employees at the Federal Correctional Institution in Three Rivers, Texas ("FCI Three Rivers")—violated his due process rights in connection with an assault prosecution that arose from two altercations between Boyd and corrections staff, in which Boyd was ultimately acquitted. Pending before the Court is a Motion for Summary Judgment filed by Special Investigative Services Technician Elida Anzaldua; Senior Officers Richard Castillo and Christian Schmale; Warden Joe Driver; Associate Wardens Phillip Childs and Mike Dungan; Captain Daryl Maune; Operations Lieutenants Thomas Watson and Eric Thompson; and Senior Officer Specialists Johnny Ponce, Jerry Shipman, and Robert Tuttle (collectively "Defendants") (D.E. 174).[1] Defendants' motion is ripe for ruling and deemed unopposed because the submission date has passed and Boyd did not file a timely response.[2]

---

1. BOP Senior Officer David Charo, one of the defendants named in the complaint, did not join Defendants' motion. The record shows that an executed summons was never returned for Charo in this case. While the United States Attorney for the Southern District of Texas initially filed an appearance on Charo's behalf, the U.S. Attorney's Office has since withdrawn as counsel and notified the Court that Charo is no longer employed by the United States, he never requested representation, and his whereabouts are unknown. *See* D.E. 89.

2. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 21 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). The deadline for Boyd's response was December 4, 2015. More than three months

## I.  Factual and Procedural Background

Boyd filed this pro se *Bivens* suit alleging that Defendants conspired to have him maliciously prosecuted for assault in federal court after he filed administrative complaints that he was physically abused on two occasions in August 2004 at FCI Three Rivers. Boyd alleged that certain defendants tampered with videotape evidence showing that he was the handcuffed victim during the incidents in question, rather than the aggressor, and that certain defendants perjured themselves during his federal trial. More specifically, Boyd's Complaint states as follows:

> A malicious prosecution conspiracy was initiated against Plaintiff by the [prison] [a]dministration. Warden Driver, Associate Wardens Childs and Dungan, Captain Maune and Special Investigations Technician Anzaldua were responsible for investigating the assault allegations which led to Plaintiff's criminal indictment. All of the above named defendants either conspired to deprive Plaintiff of freedom, failed to prevent this conspiracy or aided in preventing the discovery of this conspiracy.

> After the Bureau of Prisons Regional Office received Plaintiff's allegations of two separate assaults by staff, Special Investigations Technician Ellie Anzaldua faxed F.B.I. Special Agent Bill Cassidy statements by staff members alleging that Plaintiff assaulted Lt. Watson on 8–24–04 and Officers Ponce and Castillo on 8–30–04. Although video footage clearly showed Plaintiff was the handcuffed victim, Plaintiff was indicted for assault on October 21, 2004 in Criminal No. V–04–107. Trial commenced on February 14, 2005 and Plaintiff was acquitted on February 16, 2005. The destruction and tampering with the video evidence form the basis of Plaintiff's claim.

> In furtherance of the malicious prosecution conspiracy, Lt. Thomas Watson (one of the ringleaders)[,] Lt. E. Thompson, C.O. Johnny C. Ponce, C.O. Shipman,

---

later, on March 21, 2016, Boyd filed his Opposition to Defendants' Motion for Summary Judgment claiming he never received a copy of the motion and "ha[d] just discovered that Defendants filed a Motion for Summary Judgment." D.E. 182, p.1. In response, Defendants state that they served their motion on Boyd by mailing it to his last known address on November 13, 2015 via the U.S. Mail. *See* FED. R. CIV. P. 5(b)(2)(C); *Anthony v. Marion County Gen. Hosp.*, 617 F.2d 1164, 1168 n.5 (5th Cir. 1980); *see also* MSJ Certificate of Service, D.E. 174, p. 38. The motion was not returned to sender, thus creating a presumption that the motion was received. *See Hagner v. United States*, 285 U.S. 427, 430 (1932); *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989). Defendants further note that Boyd should have been on notice of the motion well before March 21 because he checked the civil docket sheet as recently as February 23 and complained when he did not see his Joint Pretrial Order docketed. *See* Boyd 2/23/2016 Letter to the Court, D.E. 179. The Court agrees that Boyd has failed to rebut the presumption that he received Defendants' summary judgment motion via U.S. Mail, and a cursory review of the docket sheet would have alerted Boyd to Defendants' motion.

C.O. David Charo, C.O. C. Schmale, C.O. Richard Castillo and C.O. R.E. Tuttle perjured themselves at trial.

D.E 1, pp. 3–4. In an amendment to his Complaint, Boyd added that he is seeking "redress for wonton disregard for the truth and conspiracy" by Defendants to "deprive Plaintiff of his Fifth Amendment Due Process Clause Rights." D.E. 3.

Boyd initially requested "[r]edress for mental suffering and deprivation of rights" in the form of "punitive and compensatory damages total[ling] $2,150,000.00." D.E. 1, p. 4. He now seeks an additional $850,000.00 in punitive damages "due to the length of undue delay and conduct of the Defendants in this civil action," bringing his total claim for damages to $3,000,000.00. D.E. 175.

The Court initially dismissed Boyd's suit as frivolous. On appeal, the Fifth Circuit held that dismissal of Boyd's claim for malicious prosecution was appropriate, but it remanded because Boyd's complaint included allegations supporting a due process claim. *Boyd v. Driver*, 579 F.3d 513, 515 (5th Cir. 2009). On remand, Defendants moved again to dismiss Boyd's Complaint, arguing that Boyd failed to state a due process claim because he had not suffered any loss of liberty as a result of Defendants' alleged actions, since he had not been convicted. The Court agreed and granted Defendants' motion.  The Fifth Circuit again reversed and remanded, noting that it had already held that Boyd had stated a due process claim under *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc), despite his acquittal in the underlying criminal proceeding. *Boyd v. Driver*, 495 F. App'x 518, 520, 522–23 (5th Cir. 2012).

Following remand, the Parties commenced discovery. Defendants now move for summary judgment on the grounds that Boyd has failed to provide evidence in support of his due process claims. Defendants further argue that they are entitled to qualified immunity on all claims.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn

testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## III. Discussion

As noted *supra*, Boyd did not respond to Defendants' Motion for Summary Judgment in a timely manner, and the motion is therefore deemed unopposed.[3] However, unopposed motions for summary judgment that dispose of litigation may not be automatically granted. *John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707–10 (5th Cir. 1985). The Court will thus address the merits of Defendants' motion.

### A. Sovereign Immunity

Boyd's Complaint states that he is suing Defendants in both their individual and official capacities. Defendants argue there is no evidence that the United States Government has waived its sovereign immunity to allow this suit. The Court agrees that it lacks jurisdiction over claims made against Defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985); *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) ("[Plaintiff] may bring a *Bivens* action against individual officers for a[n] alleged constitutional violation, but he may not bring an action against the United States, the BOP, or BOP officers in their official capacities as such claims are barred by the doctrine of sovereign immunity."). Accordingly, Defendants are entitled to summary judgment on all claims against them in their official capacities.

---

3. The Court notes that even if it were to consider Boyd's untimely response, Boyd offers no evidence or authority to rebut Defendants' motion. His "Opposition" merely states:

> [A]ny motion submitted by the Defendants is frivolous and submitted in bad faith. Plaintiff does not wish for the summary judgment motion by Defendants to be unopposed. Therefore, please accept this motion as an opposition to their summary judgment motion. Plaintiff has cited no authority because he does not know what frivolous issues and exhibits were submitted by Defendants.

D.E. 182, p. 1.

### B. *Bivens* Claims

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied right of action permitting damages for constitutional violations against federal officials when sued in their individual capacities. "*Bivens* is the federal counterpart of § 1983 [and] . . . extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983." *Abate v. So. Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993). To prevail under *Bivens*, a plaintiff must show that a defendant has deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Carlson v. Green*, 446 U.S. 14, 18 (1980). *Bivens* limits recovery to intentional deprivations by federal officers. *Bass v. U.S. Dep't of Agric.*, 737 F.2d 1408, 1415 (5th Cir. 1984) ("The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision was made."). Negligence is not actionable under *Bivens*. *Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 951 (5th Cir. 1999); *Abate*, 993 F.2d at 110.

Here, Boyd claims that Defendants violated his Fifth Amendment due process rights by framing him for the August 28 and August 31, 2004[4] assaults on FCI Three Rivers staff and covering up their own assaults upon him. Specifically, Boyd alleges that Defendants: (1) falsified their memoranda following the incidents; (2) presented perjured testimony at trial; (3) destroyed, tampered with, and/or withheld videotape evidence; (4) allowed a disciplinary hearing to take place without prior FBI approval; (5) referred the case for criminal prosecution in retaliation for Boyd reporting that he was assaulted during the August 28 and August 31 incidents; (6) offered

---

4.   Boyd's Complaint alleges that the assaults occurred on August 24 and August 30. However, the summary judgment evidence establishes that the incidents giving rise to this lawsuit occurred on August 28 and 31.

Boyd a plea deal when they knew he was innocent; and (7) conspired to do these things. The Court will consider each in turn.

### 1. Falsified Memoranda

Boyd alleges that Watson, Schmale, Thompson, Ponce, Castillo, Tuttle, and Shipman violated his due process rights by submitting false memoranda to frame him for assault and cover up their own assaults, and these memoranda were used against him in his BOP disciplinary hearing and the federal grand jury proceedings that resulted in his indictment for assault. Boyd Answ. to Def. Interrog. No. 1, D.E. 174, Exh. 3, p. 1.  Boyd claims that he was present on August 28 and August 31, and what these Defendants wrote in their memoranda did not take place.

Even accepting as true Boyd's claim that he was the handcuffed victim and not the aggressor on August 28 and August 31, to survive summary judgment, Boyd "must demonstrate that a genuine issue of material fact exists as to whether the false information contained in the [memoranda] was provided deliberately or with reckless disregard for the truth." *See Mason v. Lowndes Cty. Sheriff's Dep't*, 106 F. App'x 203, 206 (5th Cir. 2004) (citing *Freeman v. County of Bexar*, 210 F.3d 550 (5th Cir. 2000)). To meet this burden, Boyd "must make a 'strong preliminary showing' that the affiant made the misstatement or omission 'with the intent to mislead.'" *Id.* (quoting *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995)). Merely asserting "that an affidavit contains a misstatement (or an omission) does not give rise to the inference that the affiant acted with reckless disregard for the accuracy of the information presented . . . ." *Rogers v. Wever*, 2010 WL 3522783, at *5 (S.D. Miss. Sept. 2, 2010) (citing *United States v. Runyan*, 290 F.3d 223, 234, n.6 (5th Cir. 2002)).

Watson, Schmale, Thompson, Ponce, Castillo, Tuttle, and Shipman have submitted sworn declarations stating that, pursuant to BOP practice, each drafted a memorandum according to what they perceived happened on August 28 and/or August 31, they withheld no information, and the information provided was true, correct, and complete. Watson Decl., D.E. 174, Exh. 4 ¶¶ 3, 7; Schmale Decl., *Id.*, Exh. 5 ¶¶ 3–4; Thompson Decl., *Id.*, Exh.  9 ¶¶ 7–8; Ponce Decl., *Id.*, Exh. 12 ¶¶ 3–4; Castillo Decl., *Id.*, Exh. 13 ¶¶ 3–4; Tuttle Decl., *Id.*, Exh. 14 ¶¶ 3–4; Shipman Decl., *Id.*, Exh. 15 ¶¶ 3–4. Boyd has offered no evidence that these Defendants made false statements or omissions in their memoranda deliberately or with reckless disregard for their truth. Instead, Boyd speculated during his deposition that Defendants must have colluded in writing their statements because their version of events "never happened," and "three people are not going to fabricate something that never happened without collusion." Boyd Dep., D.E. 174, Exh. 1 at 229:8-21. However, unsubstantiated assertions are not competent summary judgment evidence. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The Court finds that "[t]he summary judgment record is devoid of any evidence, apart from [Boyd's] unsupported speculation, that [Defendants'] purported misrepresentations were made knowingly or with reckless disregard for their falsity . . . " *See Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 330 (5th Cir. 2013). Accordingly, Defendants are entitled to summary judgment on this claim.

### 2. Perjured Testimony

Boyd next alleges that Anzaldua, Castillo, Ponce, Schmale, Shipman, Thompson, and Watson deprived him of due process by providing perjured testimony at his criminal trial. Boyd Answ. to Def. Interrog. No. 1, pp. 1–2.

In *Castellano*, the Fifth Circuit held that the "knowing use of perjured testimony attributable to the state is a violation of due process" that can give rise to a § 1983 claim. *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003). In the next sentence, however, the court recognized "the well-established rule that prosecutors and witnesses, including police officers, have absolute immunity for their testimony at trial." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–70 (1993); *Briscoe v. LaHue*, 460 U.S. 325, 334–36 (1983)); *see also Enlow v. Tishomingo County*, 962 F.2d 501, 511 (5th Cir.1992) ("Witnesses, including police officers, are . . . shielded by absolute immunity from liability for their allegedly perjurious testimony.").

Even assuming the above-named Defendants perjured themselves at Boyd's criminal trial, they are absolutely immune from Boyd's due process claim based on this testimony. *See Geter v. Fortenberry*, 849 F.2d 1550, 1558 (5th Cir. 1988) ("We quickly dispose of the charge of giving false testimony by noting that witnesses are cloaked with absolute immunity."); *Benavides v. City of Corpus Christi, Tex.*, 2011 WL 835814, at *3 (S.D. Tex. Mar. 7, 2011) ("[T]o the extent Plaintiff alleges any of the individual Defendants testified falsely against Plaintiff at trial, the Defendants would be immune from liability."). Accordingly, Defendants are entitled to summary judgment on this claim.

### 3. Destroying, Tampering with, and/or Withholding Videotape Evidence

#### a. Destroying/Failing to Preserve the August 28 Videotape

Boyd claims that Watson, Childs, Thompson, Anzaldua, Dungan, Driver, and Maune deprived him of due process by destroying and/or failing to preserve videotape evidence of his

August 28 assault. Boyd Answ. to Def. Interrog. No. 1, pp. 1–2; Boyd Dep. at 36:8-14, 46:10–47:10. Specifically, Boyd claims that these Defendants: (1) ignored his multiple requests to have the videotape preserved, when they should have retrieved the video when he asked, and (2) failed to follow BOP policies and procedures regarding the preservation of videos. Boyd Dep. at 40:4-11, 56:13–57:2.

The Supreme Court has held that any Constitutional duty to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). "To meet this standard of constitutional materiality . . . , evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489 (internal citation omitted). In the Fifth Circuit, "[f]ailure to preserve material exculpatory evidence violates due process rights irrespective of whether the government acted in good faith or bad faith. However, failure to preserve merely potentially useful evidence does not constitute a denial of due process absent a showing of bad faith." *United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (citing *United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law".)). Bad faith requires either a showing of (1) animus by the defendant toward the plaintiff or (2) "a conscious effort to suppress exculpatory evidence." *Napper v. Thaler*, 2012 WL 1965679, at *26–28 (S.D. Tex. May 31, 2012) (citing *Ex parte Napper*, 322 S.W. 3d 202 (Tex. Crim. App. 2010) (collecting cases)).

**i. Exculpatory vs. Potentially Useful**

As a preliminary matter, the Court must determine whether any videotape of the August 28 incident constituted exculpatory evidence, or whether it was merely potentially useful evidence. *See McNealy*, 625 F.3d at 868.

The summary judgment record shows that only the camera located on top of the control center at the FCI Three Rivers compound could have possibly captured the August 28 incident. V-04-CR-107 Trial Tr., D.E. 174, Exh. 2 at 130:3-9. However, it is unknown whether this camera actually captured the events in question. The camera was not stationary but instead panned side to side, was not intended to provide close coverage of specific incidents, and was located nearly 100 yards away from the incident involving Boyd. *Id.* at 130:3-18; Childs Decl., D.E. 174, Exh. 6 ¶ 8. Because the camera in question was designed only to provide backup coverage in case of a mass disturbance, it was not a camera officials actively used. Trial Tr. at 276:7-11, 242:13-18; Childs Decl. ¶ 8. While Boyd speculates that one or more cameras did record footage of the August 28 incident, he admits he has no evidence that any camera was focused on the incident in question. Boyd Dep. at 72:9-19, 73:3–74:15. He also admits that he never saw any videotape and has no proof that Defendants or anyone else did. *Id.* at 74:16–75:2, 234:1-5.

Based on this evidence, the Court finds that the exculpatory value of any videotape of the August 28 incident—assuming one existed—was not immediately apparent to Defendants. Because any videotape would be only potentially useful evidence, the bad faith standard applies.

### ii. Bad Faith

Boyd claims he made several requests for the August 28 video between August 30 and November 8, 2004, but "nothing ever happened" and he "never got a response." Boyd. Answ. to Def. Interrog. No. 2, pp. 3–4. Boyd states that Watson, Childs, Thompson, Anzalda, Dungan,

Driver, and Maune failed to follow BOP policies and procedures regarding the preservation of videos and should have retrieved the video when he asked instead of allowing the tape to be recorded over. Defendants move for summary judgment on the grounds that Boyd cannot show evidence of bad faith, as the August 28 videotape was not intentionally destroyed but simply recycled pursuant to standard FCI Three Rivers procedure. *See Schreane v. Beemon*, 575 Fed. App'x 486, 490 (5th Cir. 2014) ("A defendant's "adherence to standard operating procedures in destroying the evidence . . . may counter a contention of bad faith conduct."); *United States v. Moore*, 452 F.3d 382, 389 (5th Cir. 2006) (upholding the district court's denial of due process claim where BOP recycled potentially exculpatory audiotapes of defendant's telephone conversations after 180 days in good faith pursuant to BOP internal policy).

Defendant Watson testified that he did not immediately seek out a video of the August 28 incident following Boyd's request because any video would have been from a camera that officials did not actively use, he had two staff eyewitnesses to the event, and he believed that the camera system was only to be used as a backup in cases where there were no eyewitnesses. Trial Tr. at 242:9–243:12. Lieutenant Bullard testified that the August 28 control tower video would have been kept for five days or less before it would be reused, unless someone had gone to pull it. *Id.* at 276:10–277:10. Bullard tried to check for a video when he became aware of the issue, but he found it had already been recorded over. *Id.* at 130:15-19, 275:17-19. Watson, Childs, Thompson, Anzaldua, Dungan, Driver, and Maune have also submitted sworn declarations stating that they did not tamper with any materials and acted appropriately with respect to the preservation of evidence. Watson Decl. ¶¶ 7, 9; Childs Decl. ¶¶ 10–11; Thompson Decl. ¶¶ 8, 10; Anzaldua Decl., D.E. 174, Exh. 17 ¶¶ 6–7; Dungan Decl., *Id.*, Exh. 31 ¶¶ 4, 6; Driver Decl., *Id.*, Exh. 32 ¶¶ 5–6; Maune Decl., *Id.*, Exh. 33 ¶¶ 3–4. Boyd admits that he has no proof these

individuals were involved in destroying or failing to preserve any videotape from August 28 and that he is simply speculating that they colluded to deprive him of this evidence. Boyd Dep. at 48:16–49:5, 54:7–55:21, 56:4-12, 58:15–59:4, 60:2-14, 61:19–62:3. He also concedes that just because he requested the videotape does not mean Defendants had a duty to retrieve it. *Id.* at 197:5-10. Furthermore, Boyd does not cite to any specific policy or procedure memorializing any requirements regarding the preservation of videos, even though he was asked to provide these policies during his deposition and agreed to do so. *Id.* at 58:5-14, 60:15–61:18, 291:7–292:9.

Even assuming Defendants failed to follow proper procedure regarding the preservation of videos, Boyd explicitly admits that Anzaldua and Thompson did not act in bad faith with respect to the August 28 videotape. Boyd Dep. at 81:10–82:10. Boyd also testified that he either did not know Childs, Dungan, Maune, or Watson before the August 28 incident or that he had cordial relations with them. *Id.* at 15:1-21, 16:2-8, 16:9–17:12, 50:6–52:18; Trial Tr. at 523:16–524:21. According to Boyd, only Warden Driver had any animus toward him, as evinced by threats Driver allegedly made to have Boyd beaten, prosecuted, and sent to a higher-security facility earlier in June or August 2004. Boyd Dep. at 117:17–120:12. Driver cannot recall Boyd requesting any videotapes, and Boyd admits he has no proof that Driver received his request for the videotape, engaged in a conscious effort to keep the videotape from him, or otherwise directed others not to retrieve any videotapes. Driver Decl. ¶ 3; Boyd Dep. at 58:15–59:4, 109:11–110:18. There is also no evidence that Driver ignored Boyd's requests and allowed the August 28 videotape to be recorded over. In fact, Boyd states that his first request to Driver came the week of September 6. Boyd Answ. to Interrog. No. 2, p. 4. By that time, more than five days had passed, and the videotape in question had already been reused.

Based on the summary judgment evidence, the Court finds that Boyd has failed to create a genuine issue of material fact that Watson, Childs, Thompson, Anzaldua, Dungan, Driver, or Maune acted in bad faith by destroying and/or failing to preserve videotape evidence of the August 28 incident.

### b. Tampering with and/or Withholding the Original August 31 Videotape before Trial

Boyd also contends that Childs, Thompson, Anzaldua, Dungan, Driver, and Maune violated his due process rights by: (1) tampering with and/or distorting the original videotape of the August 31 incident and (2) failing to provide him with the original August 31 videotape before his criminal trial. Boyd Dep. at 42:11–44:12, 128:14-19, 146:12–147:14, 166:21–167:3.

Boyd made a similar claim during his criminal trial that the "inner workings" of the original tape of the August 31 incident had been altered or tampered with. Trial Tr. at 414:11-15. However, he later abandoned this claim and stated that he did not believe the tape was altered. *Id*. at 426:7-22. Boyd also admitted during his deposition in this case that he does not know who tampered with the tape. Boyd Dep. at 163:17–164:3. Finally, as set forth *supra*, Childs, Thompson, Anzaldua, Dungan, Driver, and Maune have submitted sworn declarations stating that they did not tamper with any materials and acted appropriately with respect to the preservation of evidence. Childs Decl. ¶¶ 10–11; Thompson Decl. ¶¶ 8, 10; Anzaldua Decl. ¶¶ 6–7; Dungan Decl. ¶¶ 4, 6; Driver Decl. ¶¶ 5–6; Maune Decl. ¶¶ 3–4.

Boyd's claim that these same Defendants failed to turn over the original August 31 videotape before his criminal trial is effectively a *Brady* claim, whereby Boyd alleges that Defendants' actions impaired his ability receive a fair trial. *See Brady v. Maryland*, 373 U.S. 83, 86 (1963). As with his tampering claim, Boyd cannot explain what role the above-named Defendants played in failing to turn over a copy of the original videotape to him before his

14

February 14, 2005 criminal trial. Boyd Dep. at 168:10–170:3. Instead, the uncontroverted evidence shows that on January 14, 2005, the original videotape was turned over to FBI Special Agent Billy Cassidy, who is not a defendant in this case. Trial Tr. at 273:10-25; Cassidy Decl., D.E. 174, Exh. 23 ¶ 6. The Court also cured any potential *Brady* violation at trial by allowing Boyd and his attorney to: view the original video for as long as they needed before resuming the trial, play the video at trial, recall witnesses, and address any differences between the original and "distorted" video during closing arguments. Trial Tr. at 397:17–398:23, 409:5–411:3, 422:19–426:6, 431:9–438:22, 440:22–443:8, 444:11–445:7, 620:4–623:4. The Fifth Circuit has held that such a post-deprivation remedy is sufficient to cure a *Brady* violation. *See United States v. O'Keefe*, 128 F.3d 885, 898–99 (5th Cir. 1997) ("When evidence is disclosed at trial in time for it to be put to effective use, a new trial will not be granted 'simply because it [the *Brady* evidence] was not disclosed as early as it might have and, indeed, should have been.'") (quoting *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir.1985)). The Fifth Circuit has further held that a plaintiff who raises a due process claim based on a defendant's withholding of exculpatory evidence cannot recover for a constitutional violation where the plaintiff was acquitted in his criminal trial. *Craig v. Dallas Area Rapid Transit Auth.*, 504 Fed. App'x 328, 333 (5th Cir. 2012) ("The duty to disclose exculpatory information exists to ensure that the accused receives a fair trial . . . Because [Plaintiff] was acquitted in her criminal trial, any intrusion, during that trial, upon her due process rights is harmless.").

Based on the summary judgment evidence and controlling Fifth Circuit precedent, the Court finds that Boyd has failed to create a genuine issue of material fact that Childs, Thompson, Anzalda, Dungan, Driver, or Maune deprived him of due process by failing to turn over the original videotape of the August 31 incident before his criminal trial.

### c. Withholding August 28 and August 31 Videotapes from the FBI, U.S. Attorney's Office, and Grand Jury

Finally, Boyd claims that Anzaldua, Childs, Driver, Dungan, Maune, Thompson, and Watson withheld the August 28 and August 31 videotapes from the FBI, U.S. Attorney's Office, and grand jury, and that if these individuals/entities had seen the relevant videotape evidence, he would never have been indicted. Boyd Dep. at 40:12-20, 44:4-12, 194:16–195:8, 197:14–198:9.

When Boyd claimed at his criminal trial that BOP officials were withholding the August 28 video, the Court acknowledged that this was Boyd's belief but found that he had presented no evidence that this was true. Trial Tr. at 426:24–427:4.  Boyd has still failed to meet this burden. As set forth in Part III.B.3.a, *supra*, Boyd has failed to offer evidence that there was ever a videotape of the August 28 incident to provide to the FBI, U.S. Attorney's Office, or grand jury. He has also offered no evidence that Defendants acted in bad faith in failing to turn over any video from August 28.

Regarding the August 31 incident, the videotape was provided to SA Cassidy on January 14, 2005—after the case was presented to the grand jury and Boyd was indicted on October 21, 2004. Cassidy Aff. ¶ 4. SA Cassidy testified that BOP officials told him there was a videotape from August 31 and that he could have asked to see the video before the case was presented for indictment if he had wanted, but he did not. *Id.* ¶ 5. Boyd has offered no evidence that SA Cassidy requested a copy of the videotape before the case was presented to the grand jury or that Defendants played any role in when the video was turned over to SA Cassidy. Boyd has also offered no evidence that Defendants: influenced when SA Cassidy gave Assistant U.S. Attorney Tim Hammer a copy of the August 31 video or informed him of its existence, withheld the videotape from AUSA Hammer in bad faith, or influenced what evidence AUSA Hammer presented to the grand jury. Boyd Dep. at 200:8-17.

Based on the above evidence, the Court finds that Boyd has failed to create a genuine issue of material fact that Anzaldua, Childs, Driver, Dungan, Maune, Thompson, and/or Watson destroyed, tampered with, or otherwise withheld videotape evidence of the August 28 and August 31 incidents. Accordingly, Defendants are entitled to summary judgment on these claims.

### 4. Disciplinary Hearing

Boyd next alleges that Anzaldua, Childs, Dungan, Driver, Thompson, and Watson deprived him of due process by allowing his hearing before the Disciplinary Hearing Officer (DHO) to proceed without having first heard from the FBI regarding whether it planned to pursue a criminal prosecution. According to Boyd, "[n]ormally, all DHO hearings are suspended until [BOP receives] a response from the FBI as to whether or not they are going to prosecute the criminal referral," and only if the FBI declines to prosecute may a DHO hearing move forward. Boyd Answ. to Def. Interrog. No. 1, p. 2; Boyd Dep. at 101:5-13.

As a preliminary matter, Boyd does not cite to any specific policy or procedure memorializing any requirements related to disciplinary hearings, and it is unclear how these allegations give rise to a constitutional claim. *See Brown v. Rathman*, 2013 WL 5923722, at *6 (N.D. Ala. Oct. 31, 2013) (quoting *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) ("Even if respondent failed to provide petitioner with the UDC hearing per BOP policy, 'a violation of a prison regulation without more does not state a constitutional violation.'"). Even assuming Boyd is correct that FBI approval was required before the DHO hearing could proceed, he has offered no evidence that the above-named Defendants deviated from this requirement. The record shows that DHO Charles Bickle—who is not a defendant in this case—conducted Boyd's hearing on September 16, 2004. Dickle Decl., D.E. 174, Exh. 19 ¶ 2. According to Bickle's sworn declaration, the FBI was frequently informed about disciplinary

cases via telephone and provided telephonic approval to proceed with DHO hearings, and he would not have conducted Boyd's hearing without prior FBI approval. *Id.* Boyd concedes that it was possible that FBI approval was given before his DHO hearing, but it is his "guess" that wasn't the case. Boyd Dep. at 252:12-20. He also admits that he has no proof that Defendants communicated about him and the DHO proceedings. *Id.* at 253:6-11.

Based on the above evidence, the Court finds that Anzaldua, Childs, Dungan, Driver, Thompson, and Watson are entitled to summary judgment on this claim.

### 5. Retaliatory Prosecution

Boyd claims that Childs, Driver, Dungan, Maune, and Thompson referred his case for criminal prosecution in retaliation after he complained that he had been assaulted, specifically after he sent a Sensitive Administrative Remedy Request (Form BP-9) to the BOP's Regional Office on September 15, 2004. Boyd Answ. to Def. Interrog. No. 1, p. 2; Form BP-9, Boyd Dep., Exh. 8.

To establish a retaliatory prosecution claim, a plaintiff must show: (1) an absence of probable cause, and (2) retaliatory animus, *i.e.*, that the defendant's actions were substantially motivated against the plaintiff's exercise of constitutionally protected activity. *Hartman v. Moore*, 547 U.S. 250, 252 (2006); *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). "[T]he plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the same opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus." *Hartman*, 547 U.S. at 260–61. With respect to the first element, courts have found that that discipline in a prior administrative hearing and a grand jury's indictment are each sufficient to establish probable cause. *See, e.g.*, *Tarpley v. Estelle*, 703 F.2d 157, 162 (5th Cir. 1983);

*Hoffman v. Martinez*, 92 Fed. App'x 628, 632 (10th Cir. 2004); *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985).

Boyd was found guilty of assault, threatening another with bodily harm, and insolence following his DHO hearing concerning the August 28 incident. DHO Report, D.E. 174, Exh. 18. He was also indicted on two counts of assault by a federal grand jury. Cassidy Decl. ¶ 4. Boyd has offered no evidence that the grand jury's indictment was suspect or otherwise defective, and he testified that his efforts to challenge the DHO hearing in a separate federal habeas action were unsuccessful. Boyd Dep. at 265:17–266:16. Boyd also proffers no evidence that Defendants referred his case for prosecution based on retaliatory intent. The record shows that the Form 583 Incident Report generated following the August 28 incident alleged an assault on staff. Incident Report, Boyd Dep., Exh. 6. Anzaldua, Bullard, and Cassidy all testified that any time an Incident Report alleges an assault on staff, the case is automatically referred to the FBI per FCI Three Rivers policy. Anzaldua Decl. ¶ 3; Trial Tr. at 147:11-18; 372:2-12; 393:17-24. Boyd acknowledged this at his deposition. Boyd Dep. at 215:12-21.

Because Boyd's case would have been automatically referred for prosecution regardless of whether he complained, and this "action would have been taken anyway, independently of any retaliatory animus," Defendants are entitled to summary judgment on this claim. *See Hartman*, 547 U.S. at 260–61.

### 6. Improper Plea Deal

Boyd next alleges that all Defendants violated his due process rights by offering him a four-month plea deal when they knew that he did not commit any crimes. Boyd Answ. to Def. Interrog. No. 1, p. 2; Boyd Dep. at 25:3-13. Boyd also claims that all Defendants—"from the

Warden on down"—withheld the August 28 and August 31 videotapes to induce his guilty plea. Boyd Dep. at 269:11-14; 270:17-21.

Assuming that these allegations could give rise to a due process violation, the summary judgment record does not support Boyd's claim. Boyd acknowledged during his deposition that he does not know who offered him the plea deal, or whether Defendants were even involved. Boyd Dep. at 267:21–269:10. The offer "came from [his] lawyer," or "maybe it was just the U.S. Attorney." *Id.* at 268:3-14; s*ee also* FED. R. CRIM. P. 11(c)(1) ("Plea Agreement Procedure. In General. (1) An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement."). As set forth in Part III.B.3, *supra*, Boyd has presented no evidence that Defendants withheld the August 28 and 31 videotapes, and he has further admitted that he has no proof they withheld these tapes in order to induce him to plead guilty. Boyd Dep. at 271:1-3. Accordingly, Defendants are entitled to summary judgment on this claim.

### 7. Conspiracy

Finally, Boyd alleges that all Defendants "colluded" or "conspired" to violate his due process rights by committing the acts described in Parts III.B.1-6, *supra*. Boyd Answ. to Def. Interrog. No. 1, p. 1–2; Boyd Dep. at 285:12–286:3.

To establish a conspiracy cause of action, a plaintiff must show: (1) an agreement between the defendants to commit an illegal act and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citing *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)). A conspiracy claim is not actionable without an actual violation of *Bivens*. *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *see also Wade v. Akaka*, 2012 WL 6115656, at *11 (S.D. Tex.

Nov. 2, 2012), *rep. and rec. adopted*, 2012 WL 6115056 (S.D. Tex. Dec. 10, 2012) (The act of conspiring to violate due process, in and of itself, does not form the basis of a *Bivens* action; there must be an actual denial of due process before a cause of action arises.).

As explained in Parts III.B.1-6, *supra*, Boyd has failed to offer competent summary judgment evidence that he was deprived of his constitutional rights. He has also admitted that he has no proof of any agreement between Defendants. Boyd Dep. at 288:14-20. Moreover, under the "intracorporate conspiracy doctrine," a conspiracy cannot exist solely between members of the same entity. *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) aff'd, 158 F.3d 583 (5th Cir. 1998). This doctrine has been extended to BOP employees in a case nearly identical to Boyd's. *Amawi v. Walton*, 2013 WL 5346462, at *3 (S.D. Ill. Sep. 24, 2013) (holding that defendants could not be sued for conspiracy where "Plaintiff has alleged that the defendants are all officials (or former officials) of the same entity, the Federal Bureau of Prisons, and that they were all working in the BOP's interest"). Accordingly, Defendants are entitled to summary judgment on this claim.

### C. Qualified Immunity

The doctrine of qualified immunity affords governmental officials protection against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis requires a two-step inquiry. *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372, 377 (2007)

(citing *Saucier v. Katz*, 533 U.S. 194 (2001)). If the court finds a violation of a constitutional right, the next sequential step is to ask whether the right was clearly established in light of the specific context of the case. *Id.* (quoting *Saucier*, 533 U.S. at 201). A right is "clearly established" when its contours are clear enough for a reasonable official to understand that what he is doing violates that right. *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the defendant's actions violated a clearly established constitutional right, the court then determines whether qualified immunity is appropriate, nevertheless, because the defendant's "actions were objectively reasonable." *Collins*, 382 F.3d at 537. That is, the court must determine "whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action." *Id.* (citation omitted).

Defendants argue that they are entitled to qualified immunity because Boyd has failed to establish that he was deprived of any constitutional rights. *See Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (If the defendant did not violate plaintiff's constitutional rights, then "no further inquiry is needed and the defendant is entitled to qualified immunity."). The Court agrees. As set forth *supra*, Boyd has failed to offer competent summary judgment evidence in support of any of his due process claims.

## IV. Conclusion

For the reasons set forth herein, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (D.E. 174) is **GRANTED**. It is further **ORDERED** that Boyd's Motion Requesting Additional Punitive Damages (D.E. 175) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 29th day of March, 2016.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE