Case 6:06-cv-00022   Document 213   Filed in TXSD on 07/20/16   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 20, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **ANTHONY BOYD,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-06-22 |
| | § | |
| **JOE D. DRIVER,** | § | |
| Warden, FCI Three Rivers, *et al.*, | § | |
| Defendants. | § | |

### MEMORANDUM OPINION & ORDER

Plaintiff Anthony Boyd, a federal prisoner, brings this pro se *Bivens* action alleging that Defendants—13 current and former Bureau of Prisons (BOP) employees at the Federal Correctional Institution in Three Rivers, Texas ("FCI Three Rivers")—violated his due process rights in connection with an assault prosecution that arose from two altercations between Boyd and corrections staff, in which Boyd was ultimately acquitted. On March 29, 2016, the Court granted summary judgment in favor of Special Investigative Services Technician Elida Anzaldua; Senior Officers Richard Castillo and Christian Schmale; Warden Joe Driver; Associate Wardens Phillip Childs and Mike Dungan; Captain Daryl Maune; Operations Lieutenants Thomas Watson and Eric Thompson; and Senior Officer Specialists Johnny Ponce, Jerry Shipman, and Robert Tuttle (collectively "Defendants") on all claims. Now pending before the Court is Boyd's "F.R.Civ.P. Rule 60(a), (b)(1), (3) and (6) Motion to reopen the Civil Proceedings for Good Cause Shown" (D.E. 187), to which Defendants have responded (D.E. 189, 191, 196) and Boyd has filed an Addendum (D.E. 188), Second and Final Addendum (D.E. 190), Traverse to Defendant's Response (D.E. 192), and "Newly Discovered Facts Pertaining to Fed.R.Civ.P. Rule 60 Motion" (D.E. 195). Also pending is Boyd's "Rule 60(b)(3) Motion to

1

Dismiss Defendants' Summary Judgment Motion for Fraud and Lack of Jurisdiction" (D.E. 211), to which Defendants responded (D.E. 212).

## I. Background

The facts giving rise to this action are set forth at length in the Court's Memorandum Opinion & Order granting summary judgment in favor of Defendants. D.E. 184; *Boyd v. Driver*, 2016 WL 1222157 (S.D. Tex. Mar. 29, 2016). In sum, Boyd filed this pro se *Bivens* suit alleging that Defendants conspired to have him maliciously prosecuted for assault in federal court after he filed administrative complaints that he was physically abused on two occasions in August 2004 at FCI Three Rivers. Boyd alleged that certain defendants tampered with videotape evidence showing that he was the handcuffed victim during the incidents in question, rather than the aggressor, and that certain defendants perjured themselves during his federal trial.

Defendants moved for summary judgment on November 13, 2015. The deadline for Boyd's response was December 4, 2015. More than three months later, on March 21, 2016, Boyd filed his Opposition to Defendants' Motion for Summary Judgment claiming he never received a copy of the motion and "ha[d] just discovered that Defendants filed a Motion for Summary Judgment." D.E. 182, p.1. Defendants responded that they served their motion on Boyd by mailing it to his last known address on November 13, 2015, via the U.S. Mail and it was not returned to sender, thus creating a presumption that the motion was received. Defendants further noted that Boyd should have been on notice of the motion well before March 21 because he checked the civil docket sheet as recently as February 23 and complained when he did not see his Joint Pretrial Order docketed. The Court agreed that Boyd failed to rebut the presumption that he received Defendants' summary judgment motion via the U.S. Mail, and a cursory review of the docket sheet would have alerted Boyd to Defendants' motion. The Court deemed Defendants' motion unopposed, but nonetheless addressed the motion on its merits. In its Order granting

summary judgment in favor of Defendants, the Court further noted that even if it were to consider Boyd's untimely response, he offered no evidence or authority to rebut Defendants' motion. *Boyd*, 2016 WL 1222157, at *3 n.3.

On April 5, 2016, Boyd filed his "F.R.Civ.P. Rule 60(a), (b)(1), (3) and (6) Motion to reopen the Civil Proceedings for Good Cause Shown," wherein he moves the Court to reconsider its Order granting summary judgment in favor of Defendants and grant him leave to file an amended response to Defendant's motion because he never received a copy of said motion. On May 2, 2016, Boyd filed an untimely Notice of Appeal of the Court's summary judgment Order. D.E. 193.[1] Finally, on July 18, 2016, Boyd filed a "Rule 60(b)(3) Motion to Dismiss Defendants' Summary Judgment Motion for Fraud and Lack of Jurisdiction."

## II. Rule 60 Analysis

Federal Rule of Civil Procedure 60(a) provides in relevant part that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a). Pursuant to Rule 60(b), on motion and just terms, the Court may relieve a party from a final judgment, order, or proceeding for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b). Relief under Rule 60(b)(6) may only be granted in exceptional circumstances. *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002).

---

1. In doing so, Boyd divested the Court with the authority to grant his motion to reconsider. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 329 (5th Cir. 2004) (citing *Winchester v. United States Atty. for S.D. of Tex.*, 68 F.3d 947, 949 (5th Cir. 1995)) ("Once the notice of appeal has been filed, while the district court may *consider* or *deny* a Rule 60(b) motion (filed more than ten days after entry of the judgment), it no longer has jurisdiction to *grant* such a motion while the appeal is pending.") (emphasis in *Shepard*).

**1. Rule 60(b)(1) Motion to Reconsider**

Boyd has declared under penalty of perjury that he was not aware that Defendants filed a motion for summary judgment until March 21, 2016, when he was able to view a copy of the docket sheet his sister mailed to him. D.E. 187, p. 1. He does not know why he never received a copy of the motion itself, but speculates that either counsel for Defendants did not serve him, or prison staff did not deliver it to him. *Id.*, p. 2. Defendants certified that they mailed a copy of the motion to Boyd's last known address at the United States Penitentiary – Hazelton in Bruce Mills, West Virginia on November 13, 2015, via the U.S. Mail, and the motion was not returned to sender. D.E. 174, p. 33. Neither party has submitted a copy of the prison mail log showing whether the motion was actually delivered to Boyd by prison staff once it reached USP – Hazelton.

The Court finds Boyd's sworn statement that he did not receive Defendants' motion for summary judgment is sufficient to rebut the presumption that he received the motion via the U.S. Mail. If Boyd was not served with the motion, his failure to file a timely response constitutes excusable neglect, and he is entitled to reconsideration under Rule 60(b)(1). Accordingly, Boyd's request for leave to amend his response to Defendant's motion is granted, and the Court will reconsider its Order granting summary judgment in favor of Defendants, taking into account the arguments and evidence in D.E. 187, 188, 190.[2]

**B. Rule 60(b)(3) Motion to Dismiss**

In his more recent Rule 60 motion, Boyd asks the Court to "reopen and reverse summary judgment" because the Court relied on extraneous evidence in considering a previous motion to

---

2. In his "Newly Discovered Facts Pertaining to Fed.R.Civ.P. Rule 60 Motion" (D.E. 195), Boyd complains that his CDs from his criminal case and this lawsuit were stolen by BOP staff, but he does not know if this occurred while he was in the USP – Hazelton Special Housing Unit or when he arrived at USP – Big Sandy in Inez, Kentucky, where he is currently incarcerated. Boyd has offered no evidence in support of this claim or showing that Defendants were involved in any way.

dismiss, thus "convert[ing] the motion to dismiss to a motion for summary judgment." D.E. 211, p.1. Because "Defendants cannot file unlimited summary judgment motions," Boyd claims the Court lacked jurisdiction in the first place to consider Defendants' summary judgment motion, which Defendants fraudulently submitted. *Id.*

The motion to dismiss to which Boyd refers (D.E. 25) was not converted to a motion for summary judgment; as such, Defendants' current motion for summary judgment is not successive. Even if it were, there is no rule preventing a party from filing more than one motion for summary judgment, and the Court explicitly approved Defendants' request to file a dispositive motion before the case proceeded to trial. D.E. 171, p.5. Boyd's Rule 60(b)(3) Motion to Dismiss is therefore denied.

## IV. Reconsideration of Summary Judgment

Boyd claims that Defendants violated his Fifth Amendment due process rights by framing him for the August 28 and August 31, 2004, assaults on FCI Three Rivers staff and covering up their own assaults upon him. Specifically, Boyd alleges that Defendants: (1) falsified their memoranda following the incidents; (2) presented perjured testimony at trial; (3) destroyed, tampered with, and/or withheld videotape evidence; (4) allowed a disciplinary hearing to take place without prior FBI approval; (5) referred the case for criminal prosecution in retaliation for Boyd reporting that he was assaulted during the August 28 and August 31 incidents; (6) offered Boyd a plea deal when they knew he was innocent; and (7) conspired to do these things. The Court previously found that Defendants are entitled to summary judgment on all claims.

As an initial matter, Boyd offers no evidence or argument concerning the Court's opinion that Defendants are entitled to sovereign immunity on all claims against them in their official capacities and entitled to summary judgment on Boyd's claims concerning the disciplinary hearing and plea deal. He also fails to address the issue of qualified immunity. Moreover, Boyd's

Exhibits A, C through H, K, L, O, V, W, and Z were offered as summary judgment evidence by Defendants and already considered by the Court. For the reasons set forth below, Boyd's remaining evidence is insufficient to create a genuine issue of material fact, and the Court has not altered its opinion that Defendants are entitled to summary judgment as a matter of law on all claims.

### 1. Falsified Memoranda

Boyd offers reports written by Defendants Ponce, Tuttle, and Childs in support of his claim that in order to cover up assaulting him, these Defendants wrote false incident reports for the assault and conspired to submit these false reports to the FBI in order to have Boyd criminally charged. D.E. 187, Exs. A–F. Specifically, Boyd complains that Tuttle witnessed Ponce repeatedly hit Boyd in the chest, but he did not mention this in his report.

Regarding Tuttle's report, there is no evidence that Boyd knows what Tuttle witnessed during the August 31 altercation. Even assuming Boyd's claim that he was the assault victim is true, he has also failed to "demonstrate that a genuine issue of material fact exists as to whether the false information contained in the [memoranda] was provided deliberately or with reckless disregard for the truth." *See Mason v. Lowndes Cty. Sheriff's Dep't*, 106 F. App'x 203, 206 (5th Cir. 2004) (citing *Freeman v. County of Bexar*, 210 F.3d 550 (5th Cir. 2000)). Having considered Boyd's response, the Court finds the summary judgment record is still devoid of any evidence that Defendants' purported misrepresentations were made deliberately or with reckless disregard for their truth.

### 2. Perjured Testimony

Boyd offers the trial testimony of Defendants Charo, Watson, Ponce, Castillo, Shipman, and Schmale in support of his claim that they violated his due process rights when they perjured themselves at his criminal trial. *See* D.E. 187, Exs. R–U, W, SS. However, he does not address,

nor can he escape, the Fifth Circuit's "well-established rule that prosecutors and witnesses, including police officers, have absolute immunity for their testimony at trial." *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003). As the Court previously recognized, even assuming the above-named Defendants perjured themselves at Boyd's criminal trial, they are absolutely immune from Boyd's due process claim based on this testimony.

### 3. Videotape Evidence

#### a. Destroying/Failing to Preserve the August 28 Videotape

The Court previously concluded that only the camera located on top of the control center at the FCI Three Rivers compound could have possibly captured the August 28 incident; however, it was unknown whether this or any other camera actually captured the events in question.

In support of his claim that one or more cameras did record the August 28 incident, Boyd cites Schmale's trial testimony that there were five or six cameras located in the immediate area. D.E. 187, Ex. X. Without citing any evidence in support, Boyd states that "[c]ameras were located as close as 10 feet away, not 100 yards." D.E. 188, p.2. Boyd also cites a declaration from Lieutenant Don Bullard that Boyd claims "confirmed that the cameras recorded." D.E. 187, Ex. Z. Contrary to this assertion, Bullard merely testified that there were various cameras on the compound at FCI Three Rivers that all fed into the control center and were recorded on a single tape. *Id.*, ¶ 4. However, he did not state that these cameras recorded the incident in question.

Even assuming that one of these cameras did record the August 28 incident as Boyd claims, Boyd still has not offered evidence that Defendants destroyed and/or withheld any video in bad faith. Boyd has admitted he has no proof that Defendants or anyone else ever saw a video of the August 28 incident. Moreover, the summary judgment evidence shows the August 28

7

videotape was not intentionally destroyed but simply recycled after five days pursuant to standard FCI Three Rivers procedure. Boyd claims BOP Program Statement 5270.09 requires that tapes be preserved for "at least a month;" however, Program Statement 5270.09, which became effective on August 1, 2011, does not set forth any requirements regarding how long videos must be preserved. *See* U.S. Dep't of Justice, INMATE DISCIPLINE PROGRAM STATEMENT 5270.09, *available at* www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000# (last visited July 19, 2016).[3] Moreover, Boyd has offered no evidence of any policy that was in effect in 2004.

### b. Tampering with and/or Withholding the Original August 31 Videotape

In support of his tampering claim, Boyd offers as evidence a photocopy of the Government's Trial Ex. 18, the original "unadulterated" 8/31/2004 videotape (D.E. 187, Ex. M), and a photocopy of Government's Trial Ex. 20, the "tampered with" 8/31/2004 videotape (*Id.*, Ex. N). In dismissing Boyd's complaints that Defendants tampered with and/or distorted the original videotape of the August 31 incident, the Court previously noted that Boyd abandoned his tampering claim at trial and stated he did not believe the tape was altered. Boyd also admitted during his deposition in this case that he does not know who tampered with the tape, and he confirmed that "[t]here is absolutely no way to ascertain who actually made the distorted copy that was given to the defense" in response to Defendants' motion for summary judgment. D.E. 190, p.1.

Boyd next claims the admission of the "tampered with" video into evidence at trial violated Federal Rules of Evidence 1002 and 1003 and the Fifth Amendment Due Process

---

3. With respect to video evidence, Program Statement 5270.09 provides, "If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence. It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident." *Id.* at p.19.

Clause. He further complains the "tampered with" video should not have been used as evidence at trial because it was given to the FBI without a proper chain of custody. It is unclear how any Defendants violated Boyd's rights, given that the videotape was offered into evidence by Assistant United States Attorney Tim Hammer,[4] and the decision to admit the videotape at trial was made by the Court. Moreover, admission of the "tampered with" video was harmless given Boyd's acquittal.

Finally, Boyd claims that comparing the two August 31 videos with the trial testimony and original statements of Ponce and Castillo is "all Plaintiff needs to prove his case." D.E. 188, p. 1. However, the Court cannot compare the videos to each other or to any trial testimony, as the videos have not been offered as evidence in this case.[5] Even assuming the videos were properly before the Court and that they support Boyd's version of events, this would still not prove that

---

4. In his Clarification of Doctored Trial Transcript, Boyd claims the transcript he received during discovery is "fabricated throughout" and defense counsel—not AUSA Hammer—offered the videos as evidence. D.E. 207. This assertion is belied by the record in the criminal case and, if true, would undermine Boyd's claim that Defendants violated his due process rights by offering the "tampered with" tape as evidence at his criminal trial.

5. On June 6, 2016, Boyd filed a Motion for Admission of GX18 and 20 Videos Into Evidence, stating that he thought the tapes had been admitted into evidence and "will send them to the Court for admission into evidence . . . as CDs of the assaults on 8/28/04 converted from tapes" and "will also subpoena the original tapes into evidence." D.E. 197, p.2. To date, the Court has not received any CDs. On June 13, 2016, Boyd filed a Notice of Subpoena Pursuant to F.R.Civ.P. Rule 45(a)(4) and *Touhy v. Ragen* Request commanding the United States Attorney for the Southern District of Texas to produce the original videotapes and appear before the Court for a hearing on July 11, 2016. D.E. 200. On June 27, 2016, Boyd filed an F.R.Civ. P. Motion Pertaining to Videotapes, wherein he sought to have Defendants produce the original videotapes as well as another copy of the videotapes converted to CD format. D.E. 205. Finally, on July 13, 2016, Boyd filed a Motion Requesting Court Order for Replacement Videos, wherein he sought an order for Defendants to send replacement videotapes or CDs of the August 31, 2004, assault because the CDs Defendants produced during discovery "have been confiscated by the Bureau of Prisons/Defendants." D.E. 209.

Under the Amended Scheduling Order entered July 8, 2014, discovery closed January 31, 2015. D.E. 99. By written Order entered February 25, 2015, the Court extended discovery in order that Boyd could subpoena the videos in question, among other things. D.E. 147. Boyd thereafter moved to "restart the scheduling order" and immediately proceed to trial because it was "obvious the BOP is not going to comply with discovery." D.E. 164, 167. The Court granted Boyd's request in part and entered an Amended Scheduling Order setting a motions deadline of December 1, 2015. D.E. 173. The Court did not further extend the discovery deadline. To the extent Boyd wishes to reopen discovery so that he may attempt to subpoena the original videotapes, his motions (D.E. 197, 200, 205, 209) are **DENIED**. Moreover, as set forth *supra*, Boyd has offered no evidence that any Defendants in this action were responsible for confiscating his CD copies of the videotapes, and contrary to his assertion, Defendants and the BOP are not "the same entity."

9

any Defendants violated Boyd's due process rights by knowingly or recklessly presenting false evidence against him, which is the issue in this case.

### 4. Retaliatory Prosecution

Citing Anzaldua's trial testimony that all the information concerning Boyd that was sent to the FBI was "routed . . . through the captain, the [assistant wardens] and the warden" (D.E 187, Ex. P), Boyd argues that Driver, Childs, Dungan, and Maune were responsible for referring the August 28 and 31 assaults for criminal prosecution. He also cites a 1996 DOJ Program Statement on Criminal Matter Referrals, which provides that "[t]he Special Investigative Supervisor (SIS) shall present each criminal matter to the Warden to determine whether it is to be referred to the appropriate Federal, state or local law enforcement agency." *Id.*, Ex. I. Boyd claims this proves the above-named Defendants made the final determination to refer his case for criminal prosecution in retaliation for his sending a Sensitive Administrative Remedy Request (Form BP-9) to the BOP's Regional Office. He further states that Watson visited him and told he could "make this go away." D.E. 188, p. 2. According to Boyd, Defendants' "evil intent" can be inferred because the jury acquitted him "in record time." *Id.*, pp. 1–2.

As set forth in the Court's prior Order, to establish a retaliatory prosecution claim, a plaintiff must show: (1) an absence of probable cause and (2) retaliatory animus. *Boyd*, 2016 WL 1222157 at *9 (citing *Hartman v. Moore*, 547 U.S. 250, 252 (2006); *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). As the Court also explained, discipline in a prior administrative hearing and a grand jury's indictment are each sufficient to establish probable cause. *Id.* (citing *Tarpley v. Estelle*, 703 F.2d 157, 162 (5th Cir. 1983); *Hoffman v. Martinez*, 92 Fed. App'x 628, 632 (10th Cir. 2004); *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985)). Boyd has still offered no evidence that the grand jury's indictment was suspect or otherwise defective, and he

testified that his efforts to challenge the DHO finding that he was guilty of assault, threatening another with bodily harm, and insolence were unsuccessful. Boyd has also failed to offer evidence of retaliatory animus. The summary judgment evidence is that any time an Incident Report alleges an assault on staff, the case is automatically referred to the FBI per FCI Three Rivers policy. Boyd admitted this in his deposition and has offered no evidence that Driver or any other Defendant could override this automatic referral policy, even if an inmate's file was "routed through" them or they could provide input in criminal referrals.

### 5. Conspiracy

Boyd previously admitted he has no proof of any agreement between Defendants to deprive him of his constitutional rights, and he has not offered any such evidence in response to Defendants' motion. Boyd also fails to address the Court's conclusion that his conspiracy claim is barred under the intracorporate conspiracy doctrine. *Boyd*, 2016 WL 1222157 at *10 (citing *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) aff'd, 158 F.3d 583 (5th Cir. 1998); *Amawi v. Walton*, 2013 WL 5346462, at *3 (S.D. Ill. Sep. 24, 2013)).

### V. Motion for Sanctions

Finally, in his Traverse to Defendant's Response (D.E. 192), Boyd moves for criminal charges against Defendants and their counsel for conspiring to commit discovery violations, file a summary judgment motion they knew he would never receive, and exclude his opposition to their motion. Boyd also moves for sanctions against defense counsel for filing the summary judgment motion to begin with and for opposing his Rule 60 motion. Both motions are denied.

## VI. Conclusion

For the reasons set forth above, it is hereby **ORDERED** as follows:

- Boyd's Motion to Dismiss Defendants' Motion for Summary Judgment Motion for Fraud and Lack of Jurisdiction (D.E. 211) is **DENIED**.

- Boyd's Rule 60 Motion (D.E. 187) is granted only to the extent the Court will consider the arguments and evidence Boyd submitted in his amended responses to Defendants' motion for summary judgment. Having done so, the Court finds that Boyd has still failed to raise a genuine issue of material fact, and summary judgment in favor of Defendants is **GRANTED**.

- Boyd's Motion for Admission of GX18 and 20 Videos Into Evidence (D.E. 197) is **DENIED**.

- Boyd's F.R.Civ.P. Rule 60 Motion Pertaining to Videotapes (D.E. 205) is **DENIED**.

- Boyd's Motion Requesting a Court Order for Replacement Videos (D.E. 209) is **DENIED**.

- Boyd's motion for sanctions and criminal charges against Defendants (D.E. 192) is **DENIED**.

**SIGNED** this 20th day of July, 2016.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE